IN THE UNITED STATES DISTRICT COURT OF MARYLAND
(Northern Division)

| | |
|---|---|
| JOHN DOE )<br>    Plaintiff, )<br> v. )<br> )<br>MCDONOGH SCHOOL, INCORPORATED )<br>8600 McDonogh Road )<br>Owings Mills, MD 21117 )<br> )<br>Serve: Jennifer L. Curry )<br>100 Light Street, 19th Floor )<br>Baltimore, MD 21202 )<br> )<br>    Defendant. )<br> )<br> ) | Civil Action No. _____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Overview of the Case

1. Plaintiff John Doe ("plaintiff") here sues defendant McDonogh School, Incorporated ("McDonogh" or "school") for substantial monetary damages arising from the serious harms and injuries he suffered when he was a high school boarding student at McDonogh (1973-1975). During plaintiff's years at McDonogh, the school's Dean of Students was Alvin J. Levy (deceased). As the school later acknowledged, its administration and board knew that Levy had been abusing McDonogh students for years prior to plaintiff's enrollment there in 1973. Rather than removing this perpetrator and protecting plaintiff (and others), the school covered up this knowledge and allowed and enabled Levy to abuse plaintiff. McDonogh breached its obligation to plaintiff to protect him from harm.

### Parties

2. Plaintiff John Doe is a citizen of the State of Florida.

3. Defendant McDonogh School, Incorporated is a private, coed pre-K-12 school in the State of Maryland (a Maryland "citizen"), located (residing) at 8600 McDonogh Road, Owings Mills, MD 21117.

### Jurisdiction and Venue

4. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over this case because there is diversity of citizenship between plaintiff (Florida) and defendant (Maryland), and the amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391(b)(1) & (2). Venue is proper in this Court both because defendant resides in this district and because a substantial part of the events and omissions giving rise to this case occurred in this district.

### Statement of Facts

Plaintiff's attendance and residence at McDonogh and the abuse he suffered there

5. Plaintiff began attending and boarding at McDonogh as a young 9th grade student in 1973, and he remained there for the following two years.

6. As a boarding student, plaintiff was in the care and custody and subject to the authority of the school twenty-four hours of every school day. Plaintiff was entitled to the school's protection, and the school had a duty to provide it.

7. During plaintiff's attendance at McDonogh, faculty member Levy sexually abused plaintiff on multiple occasions on the school's property.

8. Levy used the guise of private "tutoring" to isolate himself with plaintiff, but instead of tutoring plaintiff, Levy used the private time for his own pleasure.

9. The sexual abuse Levy inflicted upon plaintiff included, but was not limited to, groping, inappropriate touching, and fondling.

10. Levy's predatory sexual conduct was known to and discussed among McDonogh board members, administrators, and faculty. McDonogh board members, administrators, and faculty also knew or should have known of Levy's predatory sexual conduct over the years plaintiff was a student at the school and boarding there.

11. Levy's position of Dean of Students was a senior position in McDonogh's administrative structure. By definition and design, holding the position of Dean of Students gave Levy significant power and authority over McDonogh's students' lives and their experience at McDonogh. This power is especially strong and its abuse exponentially felt in the case of students, like plaintiff, who boarded at the school.

12. By force and over plaintiff's clear resistance, Levy victimized plaintiff, a young student. On multiple separate occasions over the years, Levy sexually assaulted plaintiff and violated his bodily integrity.[1]

13. Levy's sexual assaults violated plaintiff's personhood, the integrity of his body, and his sense and ability to exercise control and agency over his life and body.

14. McDonogh knew of the harm that Levy could cause because the school knew of his conduct prior to plaintiff's enrollment in 1973. Despite this knowledge, McDonogh's board,

---

[1] Maryland's recent Child's Victim Act (effective October 1, 2023) abolishes the statute of limitations for the claim stated in this complaint. The Supreme Court of Maryland recently upheld the constitutionality of that Act.

3

administration, and faculty took no action to remove or restrain Levy. McDonogh did not do the most obvious thing it could have and should have done: remove him from the school. Instead of cutting the cancer out, the school, board members, administrators, and teachers, chose – and it was a choice – silence and inaction (complicity). The school and its legally responsible officers and agents were confronted with the blunt and ugly fact that McDonogh was and had been inhabited and infected by active, aggressive, repetitive sexual predators whose prey of choice was young male McDonogh students. McDonogh's collective silence and inaction enabled Levy's horrific conduct to continue. Plaintiff became the next involuntary recipient of Levy's abuses and exploitation.

Plaintiff's harms and injuries

15. Plaintiff suffered immediate harm and injury as a result of Levy's attacks and McDonogh's inaction and complicity. These injuries are ongoing and serious. The direct and proximate cause of these injuries are the actions of Levy, and the actions, inactions, and negligence of McDonogh. McDonogh knew that its faculty members had been engaging in wrongful student-destroying sexual misconduct.

16. Plaintiff suffered emotional distress during and after these school years. Plaintiff's time at McDonogh was a time of shame, horror, fear, abuse and intimidation.

17. The aftermath of this abuse led plaintiff down a path of emotional turmoil, causing him to suffer severe emotional distress.

18. Long after plaintiff left the school in 1975, McDonogh acknowledged Levy's history of sexually abusing students and the school's failure to act on information it had at the time of his conduct, including when plaintiff was a student.

<u>McDonogh's highly belated disclosures</u>

19. Decades after plaintiff left the school, on November 7, 2016, McDonogh informed alumni and others that Levy, the school's long time former Dean of Students who had sexually attacked and abused plaintiff, had previously been indicted on charges of sexual abuse. While Levy died prior to the disposition of the charges against him, the school subsequently reported that Levy had no intention to contest the charges.

20. Though Levy's indictment was issued in 1992, decades prior to its letter to alumni, McDonogh has not explained its truly extraordinary and plainly calculated delay in reporting the "news" of Levy's indictment to potentially affected parties.

21. McDonogh's 2016 letter stated that McDonogh, for its part, intended to conduct an outside investigation of matters related to Levy. Almost three years later, this investigation was completed. The investigation included confirmation of what had been long known in and around the school, including by board members, administrators, and faculty, regarding Levy's sexually abusive actions. The investigation determined that "Mr. Levy and Mr. Creed engaged in sexual misconduct with 19 [known] male students—*Mr. Levy from the 1940s through the 1980s and Mr. Creed from the late 1970s to the mid-1980s*." (Emphasis added.)

22. As the investigative report makes clear, the sexual misconduct was known to responsible McDonogh officials and McDonogh took no action: "some of these allegations were reported to the School at the time, and it is now clear from the completed investigation that then-active School Administration officials and members of the Board of Trustees failed to take appropriate action when these allegations were first reported more than three decades ago."

5

23. The school was aware that Levy had been engaged in sexual misconduct with male students for two decades before he engaged in sexual misconduct with plaintiff.

24. McDonogh acted with reckless, if not deliberate, indifference toward plaintiff and failed to act to protect plaintiff from harm notwithstanding its knowledge of the risk that Levy's presence on campus and in dorm rooms presented to plaintiff (and others). This failure to act was a breach of the school's duties and obligations to plaintiff. With calculation and deliberate intent, McDonogh strategically delayed for twenty-four years the disclosure of Levy's indictment and then delayed for three years the completion/release of its investigative report.[2]

Claim for Relief – Negligence

25. Plaintiff here adopts and incorporates by reference every fact and allegation contained in ¶¶ 1-24.

26. Plaintiff was a student at McDonogh and boarded there. McDonogh owed plaintiff a duty of reasonable care and protection during his attendance there. McDonogh breached its duty of care and protection and, as a direct result of that breach, plaintiff suffered and continues to suffer great harm and damage, as detailed above.

27. McDonogh breached its duty of care to plaintiff by: negligently hiring Levy, including failing to properly and adequately vet him and his history prior to his hiring; negligently failing to oversee, monitor, supervise and discipline Levy after his hiring; failing to investigate credible and repeated statements, allegations and reports of suspected incidents of Levy's abusive

---

[2] McDonogh's explanations for these delays will be a subject for future discovery. Plaintiff strongly suspects that the delays were intentional and strategically calculated to create, if possible, statute of limitations problems for plaintiff (and other similarly wronged McDonogh students). *But see* n. 1 supra (Maryland Child Victim's Act bars limitations as a defense here).

improper sexual conduct with McDonogh students; failing to investigate allegations and reports that faculty members were sexually abusing the school's students and had been doing so for decades; failing to act upon reports and information that the school, including its board members, administrators, and faculty, had about Levy's multi-decade history of sexual abuse of and improper "relationships" with McDonogh students; failing to limit or prevent Levy's access to plaintiff; failing to take disciplinary or corrective action with respect to Levy despite the school's knowledge of his actions and misconduct; failing to report what the school knew or had good reason to strongly suspect about Levy's sexually abusive actions to appropriate law enforcement authorities, thereby allowing Levy's misconduct to continue and at plaintiff's expense; by allowing Levy to be a continuous threat to plaintiff's bodily integrity, health and safety; by failing to warn plaintiff and his parents of Levy's sexual proclivities; by failing to promptly conduct a post-indictment investigation of Levy; by failing, upon notice of Levy's conduct, to remove him from any and all positions and responsibilities at McDonogh and barring him from the campus forever.

28.     McDonogh's actions and inactions breached the school's duty of care to plaintiff. McDonogh was required to act with the degree of reasonable care due as a private school that provided boarding and where plaintiff (and others) boarded. Here, McDonogh acted with reckless, if not deliberate, indifference. McDonogh's multiple breaches of its duty created the foreseeable risk that plaintiff would suffer harm and damage. Plaintiff was a foreseeable Levy victim and McDonogh failed to take reasonable actions under the circumstances to prevent his access to plaintiff. The direct and proximate consequence and result of McDonogh's breaches of duty and failures to act was that plaintiff became a victim to Levy. Levy's sexual abuses of plaintiff and all

the resulting harms and injuries to plaintiff were the foreseeable, if not inevitable, proximate result and consequence of McDonogh's numerous failures and breaches of its legal duties.

29. As a direct and proximate result of McDonogh's negligence and breaches of duty of reasonable care and treatment of plaintiff, plaintiff sustained and suffered severe physical, emotional, and psychological injuries, emotional pain, suffering, and distress. Plaintiff's injuries began in his student years at McDonogh (1973-75) and have been and are ongoing and continuous to date. Plaintiff has sought care and treatment and may continue to do so. His injuries are serious, ongoing, and will continue for the balance of his life.

## Prayers for Relief

WHEREFORE, based upon the facts to be proven at trial, plaintiff seeks substantial monetary relief, in an amount to be determined by the jury, plus available fees, interest and costs, and such other further and additional relief as the Court determines is just and proper.

## Demand for Jury Trial

Plaintiff hereby respectfully demands a trial by jury.

Respectfully submitted,

/s/ Ari S. Casper
Ari S. Casper (Bar # 14512)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(p) 410-989-5097
(f) 410-630-7776
(e) acasper@casperfirm.com
Attorney for Plaintiff